Filed 5/2/25  In re C.J. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.J., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> L.G., <br><br> Defendant and Appellant. | F088757 <br><br> (Super. Ct. No. JVDP-19-000113) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas Boze, County Counsel, and Jonathan Lee, Deputy County Counsel; Gordon-Creed, Kelley, Holl & Sugerman, Jeremy Sugerman and Anne H. Nguyen, for Plaintiff and Respondent

-ooOoo-

---

[*]    Before Levy, Acting P. J., Franson, J. and Fain, J.[†]

[†]    Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Appellant L.G. (mother) is the mother of C.J. (the child), who is the subject of this dependency case. Mother challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.3[1] hearing. Mother contends the juvenile court and the Stanislaus County Community Services Agency (agency) failed to comply with the duty to further inquire under the Indian Child Welfare Act (ICWA).[2] The agency concedes that it failed to conduct an adequate inquiry. Accordingly, we conditionally affirm the court's section 366.3 order and vacate the court's September 6, 2019 finding that ICWA does not apply to the child and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### *Initial Removal*

In May 2019, the agency filed an original petition alleging the child was described by section 300, subdivisions (b)(1) and (g). The allegations involved mother's physical abuse of the child and her sibling. The petition further alleged there was inadequate food in the home, and mother was arrested for assault with a deadly weapon and child endangerment. The child's father, James J. (father), was incarcerated and unable to arrange for the care of the child. The child was taken into protective custody and placed in a foster family agency home.

At the detention hearing held on May 14, 2019, mother and father were both present and appointed counsel. Mother completed a Parental Notification of Indian Status form (ICWA-020) indicating she may have Indian ancestry. Father denied having knowledge of any Indian ancestry in his ICWA-020 form. The juvenile court inquired of

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]     The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

2.

mother regarding potential Indian ancestry in her family.  Mother was unable to identify a tribe, but she agreed to contact her grandmother to obtain additional information.  The child was detained from mother's custody, and a combined jurisdiction and disposition hearing was set for June 17, 2019.

### *Jurisdiction and Disposition*

The agency's jurisdiction and disposition report recommended that the allegations in a first amended petition be found true and family reunification services be provided to mother and father.  The ICWA status section of the report indicated ICWA may apply due to mother's reporting of possible Indian ancestry with an unknown tribe.  The maternal grandmother disclosed possible Cherokee ancestry.  On June 7, 2019, the agency sent a Notice of Child Custody Proceeding for Indian Child form (ICWA-030) to the Cherokee tribes.  The biological family information included the full names of mother, father, maternal grandparents, paternal grandparents, two maternal great-grandparents, two paternal great-grandparents, three maternal uncles, and a maternal cousin.

The report identified several maternal and paternal relatives who were contacted for placement consideration.  Connection letters were sent to three maternal uncles, several maternal cousins, a maternal aunt, and a paternal uncle.  There is no documentation that any of the relatives were asked about Indian ancestry.  The initial jurisdiction and disposition hearing was continued to allow additional time for responses from the Cherokee tribes.  The agency subsequently filed a motion accompanied by letters from the Cherokee tribes, and none of the letters indicated the child was a member or eligible for membership in their tribe.  On September 6, 2019, the juvenile court granted the agency's motion for determination of ICWA applicability, and it found ICWA was not applicable to the proceedings.[4]

At a contested jurisdiction and disposition hearing held on September 23, 2019, the juvenile court sustained the allegations of the amended petition and ordered both

---

[4]     The order was signed on September 5, 2019, and then filed on September 6, 2019.

parents to participate in family reunification services. A six-month review hearing was set for March 17, 2020. During the family reunification period, the child remained placed in a foster family agency home. Mother participated in services, but she was still in a domestic violence relationship with an active drug user. Father failed to participate in his reunification services, and he did not maintain consistent communication with the agency. The child refused to visit with either parent for a majority of the reunification period.

The ICWA status section of the agency's review reports only stated that the juvenile court made a finding that ICWA does not apply on December 9, 2019.[5] Family reunification services were terminated for mother and father at the 12-month review hearing held on January 14, 2021. A section 366.26 hearing was not set because the child was not a proper subject for adoption and there was no one willing to accept guardianship. The court ordered the child to remain in foster care with a permanent plan of placement with a fit and willing relative. A review hearing pursuant to section 366.3 was set for June 29, 2021.

***Postpermanency Review Period***

The agency's report for the review hearing on June 29, 2021, recommended that a section 366.26 hearing be set to consider a permanent plan of adoption. The child wished to be adopted by her current care provider. The care provider planned to maintain close relationships with important people in the child's life. The social worker made efforts to maintain the child's connections with her cousins, grandmother, aunts, and uncles. On June 29, 2021, the juvenile court set a contested section 366.26 hearing for October 26, 2021.

The agency's report for the section 366.26 hearing, dated September 21, 2021, recommended termination of the parental rights of mother and father. The ICWA status section of the report contained no new information compared to previous reports. The

---

[5]     The record does not reference any hearing occurring on December 9, 2019.

4.

current care providers had placement of the child for eight months, and they expressed a commitment to adopt the child. On September 28, 2021, the care providers reported they no longer wished to have the child in their home due to increased behaviors. A permanent plan of continuance in foster care with placement with a fit and willing relative was ordered, and a review hearing under section 366.3 was set for April 15, 2022.

The status review report for the April 15, 2022 hearing recommended the child remain in a permanent plan of placement with a fit and willing relative. There were no new relatives available for placement of the child, but the social worker noted that the child discussed potential relatives as placement options. The ICWA status section of the report only noted that ICWA did not apply without additional information. The juvenile court ordered the child's permanent plan to remain, and another review hearing was set for October 7, 2022. The court reviewed and renewed the child's permanent plan at subsequent review hearings pursuant to section 366.3 every six months.

In March 2024, the agency filed a status review report, which recommended the child's permanent plan remain. The child's whereabouts were unknown because she ran away from her placement. The social worker reached out to maternal family members in order to locate the child. The ICWA status section of the report indicated there was no new information suggesting the child was an Indian child. The juvenile court continued the child's dependency status, and a "runaway" review hearing was set for June 6, 2024. The child was still on runaway status on June 6, 2024, and another "runaway" review hearing was set for September 4, 2024. The child returned to placement on July 2, 2024, and a section 366.3 review hearing was scheduled for September 17, 2024.

The agency's report for the September 17, 2024 review hearing recommended that the child remain in a permanent plan of placement with a fit and willing relative. The ICWA status section reported no new information or inquiries of the child's family members. The report stated the agency made diligent efforts to locate appropriate relatives for placement. The child identified an aunt as a potential placement option. The

5.

social worker contacted the aunt, but space limitations prevented her from being considered by the agency. There was no documentation of an inquiry of the aunt regarding Indian ancestry.

At the postpermanency review hearing held on September 17, 2024, mother and the child were both present and represented by counsel. Mother's counsel submitted on the agency's recommendation. The juvenile court adopted the agency's recommendation and set a review hearing pursuant to section 366.3 on March 11, 2025.

**DISCUSSION**

Mother contends the juvenile court's finding that ICWA did not apply was not supported by substantial evidence because the agency failed to comply with its duties of initial inquiry. other argues the record was insufficient to support the court's ICWA finding because there was no documentation of an inquiry of all identified family members.

### A. Applicable Law

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

Under ICWA's state analogue, the California Indian Child Welfare Act (§ 224 et seq.) (Cal-ICWA), "courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child … is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*); § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)[6] The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (b)(1).)  Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b)(2), 306, subd. (b).)  The juvenile court has a duty at the first appearance of each parent to ask whether they "know or have reason to know that the child is an Indian child." (§ 224.2, subd. (c).)  The court must also require each parent to complete form ICWA-020.  (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).)  As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or agency "has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (*Id*., subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the agency "shall make further inquiry regarding the possible Indian status of the child, and

---

6       All further references to rules are to the California Rules of Court.

shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the juvenile court or agency has " 'reason to know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker to conduct further inquiry. (§ 224.2, subd. (i)(2).)

### B. Standard of Review

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child under a substantial evidence standard, and the court's finding that the agency has conducted a proper and adequate inquiry and due diligence for abuse of

discretion.  (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.)

Regarding the juvenile court's discretion in evaluating the agency's inquiry efforts, this court explained in *K.H.*, "so long as the agency conducts a reasonable inquiry and documents its results, the juvenile court will have the room to exercise its discretion in determining whether the agency's efforts are sufficient to satisfy the mandates of ICWA and related California law." (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 604.)  "The agency's inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*Ibid*.)

### C.  Analysis

Pursuant to its duty under section 224.2, the juvenile court inquired of mother regarding her knowledge of Indian ancestry in her family.  The child's mother was unable to identify a tribe, but the maternal grandmother subsequently disclosed possible Cherokee ancestry.  Notices were sent to the Cherokee tribes by the agency, and none of the tribes responded that the child was eligible for membership in their tribe.  Based upon this information, the court found ICWA was not applicable.

The duty of inquiry, however, did not end with asking the parents and a single maternal relative.  The agency was also required under section 224.2, subdivision (b) to ask available maternal relatives.  Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers-or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)  There were additional maternal relatives that were in contact with the agency during the proceedings as potential placement options.  The agency either failed to ask these extended family members about Indian ancestry or did not document it.

Under the circumstances, we conclude the agency did not fulfill its statutory duty of inquiry.  (§ 224.2, subd. (b).)  As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the agency conducted an

9.

adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. The agency even concedes its ICWA inquiry of the child's maternal family was inadequate since it failed to attempt contact with available maternal relatives. The child remains under the court's jurisdiction. The matter is continuing, as the court ordered the child into a permanent plan of continued foster care, which requires ongoing court supervision. (§ 366.3, subd. (d).)

Accordingly, there is no need to set aside the juvenile court's section 366.3 order "even conditionally" because the duty to inquire is ongoing. (See *In re S.H.* (2022) 82 Cal.App.5th 166, 176–179 ["So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both the [a]gency and the juvenile court have an adequate opportunity to fulfill those statutory duties."].) A conditional reversal "may lead to unnecessary additional hearings, delay, and the micromanagement of further ICWA inquiry." (*Id*. at pp. 176–177.) Instead, we vacate the court's September 6, 2019 finding that ICWA did not apply to the child. The section 366.3 order is conditionally affirmed and the matter remanded with directions for the court to conduct further proceedings consistent with section 224.2 and the court and agency's continuing ICWA inquiry duty.

## DISPOSITION

The juvenile court's section 366.3 order is conditionally affirmed. The court's September 6, 2019 finding that ICWA does not apply is vacated. We remand to the juvenile court for full compliance with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court's original section 366.3 order will remain in effect.